# Robert Henry Gallagher *v.* Wayne Steam Company, Appellant.

*Master and servant—Wrongful discharge—Evidence.*

In an action by an employee against his employer to recover a balance of salary after an alleged wrongful discharge, where the plaintiff alleges that his discharge was prompted solely by defendant's desire to get clear of paying his salary, it is proper to admit evidence that defendant employed another person at half the salary which was paid to the plaintiff; and this is the case although the defendant replies that the new employee was to perform only half the work. All the evidence on the subject is for the jury.

In an action by an employee against his employer to recover a balance of salary after an alleged wrongful discharge, it appeared that the plaintiff had been a superintendent of the defendant, a steam company. He had been first employed by a parol agreement, and there had been some dissatisfaction with the way in which he had performed his services. Subsequently it was agreed in writing that he should take charge of the plant of the company and manage it to the best of his ability, subject to the directions of the officers of the company as conveyed to him by the secretary, and that he would " carry out said directions cheerfully, faithfully and promptly." He was also to take charge of work given the company by a partnership of which the secretary of the company was a member. The contract further provided that if the company undertook to do certain work according to a theory contrary to plaintiff's judgment it would release him from any liability as to successful results. It was also provided that plaintiff should not be responsible for the successful heating of houses according to the rules of the American District Steam Company. Sometime after the contract was signed he received a letter written by the secretary of the company, but signed by the name of the firm of which the secretary was a member, directing him to do certain work according to the rules of the American District Steam Company. Plaintiff replied, objecting to do the work in the manner requested. The secretary replied immediately stating that he had inadvertently signed his previous letter with his firm's name, instead of as secretary, and again requesting plaintiff to do the work in the manner previously directed. Plaintiff persisted in doing the work in his own way, and was subsequently discharged for violation of the provisions of the agreement. *Held*, (1) that it was error for the court in its charge practically to eliminate from the case the first letter because it was signed by the firm, and not by the secretary in his official capacity ; (2) that the court should have charged that if the jury believed that both letters had been received by plaintiff, and that plaintiff refused to comply with the instructions which they contained, the verdict must be for the defendant.

Argued Feb. 7, 1898. Appeal, No. 221, Jan. T., 1897, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1896, No. 55, on verdict for plaintiff. Before WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover balance of salary. Before CLAYTON, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial Walter B. Smith, a witness called for plaintiff, testified in chief as follows:

" Q. Mr. Seber was employed by the Wayne Steam Company in the place of Gallagher? A. Yes, sir. Q. What were the wages paid to Mr. Seber? "

Defendant objects.

The Court: It may have some bearing if his discharge was for economy.

Mr. Robinson of counsel for plaintiff: I propose to show that it was for the purpose of saving money.

The Court: I suppose so.

An exception is noted for the defendant.

" Q. What were you to pay Mr. Seber? A. To the best of my recollections twelve hundred dollars. Q. As against the twenty-four hundred? A. Mr. Gallagher was to do different work, there were forty or forty-five houses in addition to running the plant at Wayne and doing the house work at Wayne." [1]

The court charged in part as follows:

[The parties have put great stress on that letter; now it seems to me that the defendant has put too much stress upon it. Now let us read it, taking it for granted it was sent and received. You will observe there was first a letter of October 10; the parties seem to have gotten along pretty well without any unusual friction until October 10, 1893, then Messrs. Wendell & Smith, not Mr. Smith at all, Messrs. Wendell & Smith, of which firm Mr. Smith was a member, and had no more right to give instructions to Mr. Gallagher than one of you had. Messrs. Wendell & Smith sent him this letter: " In the work at Overbrook we want you to set up the traps just as they are at the American District Company's place." Now, if that had come

from Mr. Smith, as secretary of the Wayne Steam Company, it might be considered a positive direction, but I say to you that Messrs. Wendell & Smith had no right to give that direction. He had given his estimate, and in that estimate the traps were to set in the usual way, and the evidence is almost overwhelming that up to that time they had set them with that hole in them; that was their usual way of setting them. Now, October 10, Messrs. Wendell & Smith, for whom the work was being done, requests that they should be set without the hole; that is Messrs. Wendell & Smith. Now when he answered he said (October 13 is his answer) to Mr. Smith; he speaks about the success of the plant, and that his was the only proper way to set them up, etc., virtually declining to make the alterations. I say to you he had a right to send that letter to Wendell & Smith, and that they had no right to give him directions or orders. Now, the reply to that letter seems to have been one which may have some bearing upon the case. It is signed by Walter B. Smith, secretary of the Wayne Steam Co. He knows his authority to act and to give a positive order; if he has done it, it will be for you to say; that is the turning point in the case, whether Mr. Smith, as secretary, has given him such a positive direction as will mean an absolute command, and if he has, if this letter contains an absolute command, and if he has disobeyed it, then there can be no recovery. He says, "The letter of October 10, in regard to the work at Overbrook, ought to have been signed by me as secretary, as it was between us the agreement was made in reference to this work, as you will see by reference thereto; there has been a continual criticism of the wrong use of the steam appliances furnished to us by the American District Company (Who is criticising this? The American District Company? He doesn't say) and it is with a view to settle these differences that I have written you." (It doesn't say the difference was between the Wayne Steam Company and him, it doesn't say who is criticising the work, but Mr. Smith seems desirous that these criticisms shall end.) "In reply to your letter of the 12th inst. would say that while personally ignorant of many matters in regard to the use of the steam, I can easily recognize the justice of the position of the manufacturer, (Does he mean, therefore, that it is the manufacturer who has criticised this work, or was it the Wayne Steam Company?) who

has spent a large amount of time and money to perfect an appa-
ratus, desiring to have it used as built, I do not see that there
is enough difference to require you to take the stand that you
will not do so." Now as between him and the manufacturer
he had a right to take that stand, but not between him and his
employer. Now it is for you to say in the fair reading of this
letter, whether it was an absolute command. Might not Mr. Gal-
lagher have supposed that Mr. Smith was speaking in the inter-
est only of the manufacturer? "The manufacturer is criticising
the work and, as between you and the manufacturer, why do
you say you will not set them as they are made." If it was
the Wayne Steam Company that directed it to be set as made
and he said he would not, I say to you that there can be no
recovery if he understood it, or if he ought to have understood
the reading of this letter, as a command from this company, and
he failed to obey it, he cannot recover. The letter says, "I
don't see that there is enough difference for you to take the
stand that you will not do so." Now is that a positive com-
mand of the company? No, he says "I hope you will give the
matter a little further consideration and set traps in the next
house or two just as they come to us" (and then he goes on and
says), "and relieve you from criticism of being obstinate in car-
rying out of your own ideas, thanking you very much for your
favor, I am, Yours very truly, Walter B. Smith, secretary of
the Wayne Steam Company." Gentlemen, that is the most
important piece of evidence in the case. It will have to be con-
sidered in the light of all the evidence. Does it unequivocally
express a command to this man? It hopes that he will consider
it. It does not say, "Now, this thing must quit." Mr. Smith
might have considered it as a polite way of giving a command.
But politeness, you know, does not amount to much when it
terminates in a discharge or cutting a man's head off, politeness
before and the blow afterwards don't amount to much. A man
may say, "My dear sir, will you permit me to cut off your head?
Or I intend to cut your head off." You may put it politely if
you want to. This was a polite note, and it is subject to con-
siderable or just criticism. I say I take it for granted that this
note was received by Mr. Gallagher. The question is whether
it conveyed to him clearly and distinctly and unequivocally
that he should hereafter "set them as they came from the man-

ufacturer." I say, therefore, that I will leave that question, together with the evidence, with you; you will have to read that letter in the light of surrounding circumstances, in the light of the parol testimony, and if you come to the conclusion that Mr. Gallagher at that time knew, or ought to have known, that that was a command from that time to set these traps as they came from the manufacturer, and he refused to do it, that is an end of his case.] [2]

Defendant's points and the answers thereto were as follows:

1. If the jury believe that the letter of October 10, 1893, from Wendell & Smith to the plaintiff, and the letter of October 13, 1893, from Walter B. Smith, secretary of the company defendant, to the plaintiff, were received by the plaintiff, and subsequent to that time the plaintiff set up steam traps at Overbrook in a manner other than they are designed to be placed by the American District Steam Company, then the verdict must be for the defendant. *Answer:* I decline to affirm that point. I will leave it to you, I have read the letters to you, and if you come to the conclusion under all of the evidence that Mr. Gallagher ought to have read them as a positive order, and if they give a positive order to set them as they were made, then the point would be affirmed, but I decline to construe these letters as a positive order. I will leave that with you under all the evidence. [5]

2. Under the law and the evidence the verdict must be for the defendant. *Answer:* I decline to so charge you. Now, gentlemen, you may retire, take the papers with you, and take your time, and try to arrive at a satisfactory verdict. [6]

Verdict and judgment for plaintiff for $1,222.01. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2, 5, 6) above instructions, quoting them.

*E. H. Hall*, for appellant, cited Matthews v. Park Bros. & Co., Limited, 146 Pa. 384.

*V. Gilpin Robinson*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:
The plaintiff's trade was that of supervising and directing

the placing and putting in operation of steam heaters; the defendant's business was that of contracting for and selling them. In the course of their business they undertook to adapt them to the wants of the purchaser; hence the need of plaintiff's services. He went into their employ in the year 1890, and so continued until July 30, 1893, the contract up to that time resting in parol. As appears by letter of that date from the secretary of the company to him, there was dissatisfaction with the manner in which he had performed service; for the secretary says to him, after calling his attention to his past conduct, "but if you are willing to follow out my direction, as set out in the accompanying agreement, I am perfectly willing to drop the past, and hope that our future experience will convince you that I have not acted in the past except for the benefit of the company and to assist you, to the best of my ability." The agreement enclosed was signed by plaintiff and returned to the secretary. By this agreement it is stipulated that Gallagher shall take charge of the plant of the Wayne Steam Company at Wayne, Pa., and manage it to the best of his ability, subject to the directions of the officers of the company, as conveyed to him by the secretary, Walter B. Smith, and that he will carry out said directions cheerfully, faithfully and promptly; also take charge of any work given the company by Wendell & Smith of Overbrook, and direct the men in charge, to the best of his knowledge. Then, the compensation is fixed at $2,000 per year, to be paid fortnightly, but subject to increase to $2,400 on certain contingencies, as follows: The first year is to be computed from June 1, 1893; further, after the termination of the contract period, it was agreed that the parties would enter into a new contract at a salary satisfactory to Gallagher, not exceeding $2,400; or if he should not desire to make such a contract, then he should be paid $400 additional for the first year's service. It was further agreed that, if Wendell & Smith should contract for more than forty-five houses during the year ending June 1, 1894, then Gallagher's compensation should be increased in proportion to the increase of work, not to exceed, however, $2,400 per year. Then occur these somewhat singular stipulations; that, if the company undertook to lay mains or to operate the steam plant according to a theory contrary to the judgment of Gallagher, it would release him from any liability

as to successful results or damage to the mains and plants, from its methods of operation; further, that he should not be responsible for the successful heating of houses according to the rules of the American District Steam Company. It is further stipulated that Gallagher will follow out the directions of the company as to the method of and mechanical construction of the work, but after that, he should not be in any way liable; and further, that the agreement might be terminated by either party on failure of the other to carry out its terms.

Gallagher continued his service under the contract until October 10, 1893, without friction, so far as appears from the correspondence. On that day, however, this explicit order was given him in writing: "In the work at Overbrook we want you to set up the traps just as they are designed to be placed by the American District Steam Company." To this Gallagher replied by letter of October 12, in which he says: "Your favor of the 10th received in reference to the manner we connect our steam traps;" he then at length states how in his opinion they should be constructed, and closes with this emphatic language: "I do object to the criticism of any one who thinks he knows and don't know the true principles of the subject discussed. A person should be judged more by his deeds than his words, and in conclusion would say I would not think for one moment of changing the construction of our work unless something better was offered, and must most respectfully decline to accept anything to the contrary, when I know I am right in my claims, which are the result of a profitable and extensive experience in my line of work." To this letter, Secretary Smith replied the next day, stating he had inadvertently signed his letter of the 10th, Wendell & Smith, instead of as secretary, and further stating that he did not see that there was enough difference in the respective methods to warrant the stand taken by Gallagher, and expressing the hope that he would set the next traps just as they come, and thus save himself from the accusation of obstinacy.

There is no further correspondence, but much evidence that Gallagher persisted in setting the traps according to his methods, up until January, 1894. There was, besides, some friction between him and his employer on other subjects; on the 24th of that month, Secretary Smith, peremptorily, in writing, discharged

him for violation of the provisions of the agreement. There-
upon, Gallagher brought this suit against defendant for breach
of the covenants in the contract, averring that he had faithfully
kept the covenants on his part, and defendant had, without
cause, discharged him. His claim was for the balance of the
year's salary, with interest computed for the whole year at
$2,400, deducting the sum paid him, $1,054. The court sub-
mitted the evidence to the jury, with instructions on the points
of law raised. There was a verdict for plaintiff in the sum of
$1,222.01, and defendant appeals, assigning six errors, one to
the admission of evidence, and the others to the law, as stated
by the court, applicable to the evidence.

As to the alleged error in the admission of evidence, it is not
sustained. The plaintiff denied any violation of instructions,
and alleged that his discharge was prompted solely by defend-
ant's desire to get clear of paying his salary, and to employ
another superintendent at half what it contracted to pay him.
Plaintiff offered to prove that another superintendent was imme-
diately employed at a salary of $1,200 ; the court admitted the
evidence, and defendant excepted. If, as plaintiff alleged, he
was competent, which defendant did not deny, and if, as he fur-
ther alleged, he had faithfully performed the contract on his
part, his averment that his discharge was without cause was
improbable, for why discharge an entirely faithful and competent
officer ? He undertook to rebut the improbability by showing
that it was done on the score of economy. True, the defendant
replied, the new officer was to perform only half the work Gal-
lagher contracted to do, but all the evidence on that subject
was for the jury. We are of opinion that there was no error in
admitting the testimony.

The remaining five assignments, in substance, embrace but
one subject, the court's instruction on the significance of the
evidence tending to show cause or want of it for the discharge.
The learned judge, after referring to the agreement and cor-
rectly instructing the jury that, by its terms, if Gallagher dis-
obeyed or did not heed the orders of his employer, it had a right
to discharge him at any period of the year, and Gallagher could
not sustain an action for damages, further said to them, how-
ever : "Now, the whole question for you, therefore, so far as
this disobedience is concerned, is, was there a clear, positive

order from the company to set these machines without that hole drilled in them, as they came from the American District? If there was, I say to you that was a breach of the covenant, and a breach of the covenant means that he cannot recover upon it." He then goes on to point out conflict in the oral testimony, then comes to the letter signed Wendell & Smith, of October 10, and says: "The parties have put great stress upon that letter; now, it seems to me that defendants have put too much stress upon it. Now, let us read it, taking for granted it was sent and received. Now, you will observe, there was first a letter of October 10; the parties seem to have gotten along pretty well without any unusual friction until October 10, 1893, then Wendell & Smith, not Mr. Smith at all, Messrs. Wendell & Smith, of which firm Mr. Smith was a member, and had no more right to give instructions to Mr. Gallagher than one of you had . . . . Now, if that had come from Mr. Smith, as secretary of the Wayne company, it might be considered as a positive direction, but I say to you that Messrs. Smith & Wendell had no right to give that direction."

We think this instruction was error, and, necessarily, did great injustice to the defendant. Mr. Smith, the secretary, was a member of the firm of Wendell & Smith, and in plaintiff's contract he expressly agrees to take charge of any work given by them to the Wayne company, of which Mr. Smith was also secretary, and before October 10, much work was given by Wendell & Smith to the company. Doubtless, Gallagher knew the relations of Smith to both companies, and it is clear from his own letter in reply that he knew the order was from his own company, inadvertently signed by Mr. Smith, Wendell & Smith, for the firm of which he was a partner, instead of by Smith, secretary for the company of which he was an officer; for he does not intimate that the writers have no authority to direct his work, and, therefore, he declines to comply, but he declines solely because he knows best how to do the work. And then, when Mr. Smith, in the letter of October 13, points out the mistake in signature, Gallagher does not withdraw his contumacious and offensive language in his letter, but leaves it stand as the expression of his opinion that the instructions of his employer are prompted by ignorance of their business. To hold, because of the mistake in signature, this significant letter

should be practically eliminated, is to give to what is little more than a quibble, a gravity to which it was not entitled. Surely, after Gallagher learned from the express declaration of Smith, the next day, that the signature was a mistake, and that the letter was really from his employer, from that moment, if he did not know it before, he had the distinct, positive order to put the traps in as they were designed by the American District Steam Company ; and, if after that date, he stubbornly persisted in his own method, the company was justified in discharging him, and the court erred in not so instructing the jury. The evidence as to defendant's knowledge of Gallagher's peculiar character obtained by his employment before the agreement, the singularity of the agreement itself, the correspondence after the agreement, all point to Gallagher as probably a competent man, but a self-willed and obstinate one, and to an effort on the part of his employer to guard against his infirmities by express contract, at the same time to have the benefit of his valuable services at what both parties deemed a fair remuneration. We think defendant not only entitled to a fair construction of the contract, which it got, but to a wholly different view of the evidence, which very clearly tended to show that plaintiff had violated it. Defendant's first prayer for instructions, as follows : "If the jury believe that the letter of October 10, 1893, from Wendell & Smith to the plaintiff, and the letter of October 13, 1893, from Walter B. Smith, secretary of the company defendant, to the plaintiff, were received by the plaintiff, and subsequent to that time the plaintiff set up steam traps at Overbrook in a manner other than they are designed to be placed by the American District Steam Company, then the verdict must be for the defendant," should have been affirmed without qualification.

The judgment is reversed, and a v. f. d. n. awarded.