## Carson *v.* Hosiery Company.

*Appeal—Practice, Superior Court—Binding instructions.*

When the court below gives binding instructions against a plaintiff, he ought upon appeal to print the statement of his cause of action as presented to the court below, in order that the question upon which the court passed may be plain.

*Contract—Construction—Province of court.*

Where the contract is in writing and there is no ambiguity upon the face, and there was no evidence which would have warranted a finding that any word therein used had, with regard to that particular subject-matter, a technical meaning different from that which it ordinarily conveyed, the construction of such contract is for the court.

There is no error where the trial court gave binding instructions for the defendant, where the plaintiff claimed by reason of his discharge under a contract of employment before the expiration of the term because of his refusal to live up to the terms of the agreement, such contract being construed with a view to the general purpose which the parties were seeking to accomplish when they formulated the details of the arrangement.

Argued Oct. 25, 1900. Appeal, No. 113, Oct. T., 1900, by plaintiff, in suit of John W. B. Carson against West Branch Hosiery Company, from judgment of C. P. Northumberland County, Sept. T., 1897, No. 478, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Assumpsit. Before SAVIDGE, P. J.

It appears from the record that plaintiff was employed by defendant company as salesman under a contract in writing, and was discharged from his employment before the expiration of the term agreed upon, and subsequently brought this action for $625.

It appears from the evidence that the contract, which was in the form of a letter from plaintiff to defendant, contained the following language:

" I am to call on the jobbing or wholesale trade and such retail trade as in my judgment will not conflict with my wholesale customers, and as often as deemed necessary to advance the interests of the West Branch Hosiery Company; and I further agree to call at any time upon any customers in my terri-

tory that said company may desire without any expense to said company."

The contract was for two years, and after having been in effect one year, plaintiff received a letter from defendant as follows:

"We want you to go to Albany, New York, leaving Philadelphia so that you will be in Albany sometime Monday, the 24th inst. We want you to notify us when you leave Philadelphia and also advise us of your arrival at Albany, as we want to send you special instructions upon your arrival there. While there see all the trade, and from there go as follows: Albany to Utica, Utica to Oswego, Oswego to Courtlandt, Courtlandt to Ithaca, Ithaca to Elmira, Elmira to Milton. Our haste in this matter is due to correspondence which may lead to considerable business, and we want you there."

Plaintiff having refused to comply with this order, he was discharged by defendant company.

[At the trial the court instructed the jury to find for the defendant.] [1]

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was in instructing the jury to find a verdict in favor of defendant.

*E. O. Michener*, for appellant.—The rule seems to be that the court will not construe a written contract where the parts in dispute are expressed in words of more than one meaning. Such words create an ambiguity, and their construction becomes a mixed question of law and fact, and the question of fact must be determined by the jury: Ford v. Buchanan, 111 Pa. 31.

It is submitted that the defendants had no right to discharge the plaintiff from their employment, under the circumstances, for the following reasons:

1. There was no refusal on his part to do and perform any service that the defendants had a right to call upon him to perform.

2. That the defendants had no right to call upon the plaintiff to make the trip mentioned in their letters, without specifically designating the customers whom they desired him to visit,

3. Because the evidence shows that part of the district to which he was directed to go had just been gone over, and that it was unreasonable for him to be required to go over it again so soon.

4. If there is any doubt as to whose judgment was to be exercised in determining how often it might be necessary to call upon certain parties, in order to advance the interests of the defendant company, then, as the contract is wholly silent upon the question, it was for the jury to determine under the evidence; and upon this point the uncontradicted evidence of the plaintiff was that the agreement between them gave him the discretion, and not the defendant company.

5. Because the evidence showed that the only ground for the discharge of the plaintiff was his failure to obey the instructions contained in the letters of May 21 and May 22; and as the defendants had no right under the contract to give the plaintiff any such instruction, his neglect to comply with this order was not sufficient justification for his discharge.

*Wm. H. Hackenberg*, for appellee.—An employer may not without cause discharge an employee who has contracted to serve a specified term; but when there is any misconduct inconsistent with the relation of master and servant, the master has an undoubted right at any time to put an end to the contract, and what is a sufficient reason for dismissal is a question of law for the court: Matthews v. Park Brothers, 146 Pa. 386.

Faithful service is a condition precedent to the right of a servant to recover wages; misconduct inconsistent with the relation of master and servant will justify the master in putting an end to the contract: Singer v. McCormick, 4 W. & S. 265; Matthews v. Park Brothers, 146 Pa. 384; Henderson v. Hydraulic Works, 9 Phila. 100; Allentown Iron Co. v. McLaughlin, 24 W. N. C. 343.

OPINION BY W. D. PORTER, J., December 10, 1900:

The plaintiff was employed by the defendant company as a salesman under a contract in writing, was discharged from said employment before the expiration of the term agreed upon, and subsequently brought this action. He does not print his statement, and we are unable to determine from the record as

presented in the paper-book whether he seeks to recover certain instalments of his salary becoming due after his discharge, or the entire damage arising from an alleged improper discharge from his employment. When the court below gives binding instructions against a plaintiff, he ought upon his appeal to print the statement of his cause of action as presented to the court below, in order that the question upon which the court passed may be made plain. In the present case, however, the principles involved in the question passed upon are equally applicable in an action for salary upon the contract and an action for damages for the violation thereof.

There was no dispute as to any fact material to the disposition of the questions involved. The contract was in writing, there was no ambiguity upon its face, and there was no evidence which would have warranted a finding that any word therein used had, with regard to that particular subject-matter, a technical meaning different from that which it ordinarily conveyed. The construction of this contract and the ascertainment of the rights of the parties thereunder was for the court. There was no dispute as to the fact of the discharge before the expiration of the term of service, nor that the plaintiff had pursued the course of action for which the defendant company asserted the right to discharge him. The question whether under the written agreement and the undisputed facts there was a sufficient reason for the dismissal of the plaintiff was a question of law for the court: Matthews v. Park Bros., 146 Pa. 384 ; 159 Pa. 579 ; Gallagher v. Wayne Steam Company, 188 Pa. 95. The plaintiff had received from his employer a written order to be in Albany upon a certain day and there see all the trade; from there to proceed to Utica, Oswego, Courtlandt, Ithaca, Elmira and Milton. He replied to this in writing, stating that he had no money with which to start on the trip, and saying " forward check and I shall go." In a postscript he suggested that the cost of the trip from Elmira to Milton be paid by the defendant company. To this letter the defendant company replied declining to furnish the money, notifying him that they expected him to be in Albany upon the day mentioned, and changing the route to be followed by the plaintiff by directing that upon leaving Elmira he go to Troy, Muncy, Sunbury and Harrisburg, Pa., " to see the trade, and stop at Milton to see us,

then the question of expense in coming to Milton will be small." Under the terms of the contract the plaintiff was to pay his own traveling expenses, and he had no right to call upon the defendant company to advance him any money for that purpose. His salary had at that time been paid in advance, and he had no claim whatever upon which he could call upon the defendant company to pay him money. The plaintiff admits that he took no steps whatever to obey this order, and completely ignored the commands of his employer. He challenges the right of his employer to discharge him because of his refusal to obey this order, upon the ground that under the terms of the contract the employer had no right to give the order. He does not seem to have so construed the contract at the time of his reply to the defendant's first order, for the only reason then given for not going was that he did not have any money. If, however, he had not covenanted to obey such an order he is still in a position to insist upon the terms of the contract.

The whole case, therefore, must turn upon the construction of the contract. In construing such a contract we must do so with a view to the general purpose which the parties were seeking to accomplish when they formulated the details of the arrangement. All the testimony agrees, and the instrument indicates upon its face, that this written contract was in the nature of a proposition submitted by the plaintiff and afterwards accepted by the defendant. The contract throughout uses the personal pronoun " I " when referring to the plaintiff; it was a statement to the defendant of what the plaintiff proposed to do for it, and the compensation which he expected to receive therefor. When the plaintiff's proposition was accepted, and the contract in this form executed, he became thereby engaged with the defendant company for the sale of such goods as they might manufacture or have to sell. He was guaranteed a salary of $2,500 a year, payable in monthly instalments, for a period of two years, and was to receive, in addition, five per centum on all sales in excess of $50,000 per year, and he was to have the sale and receive credit, no matter by whom sold, for all goods sold in Massachusetts, New Jersey, Delaware, Maryland, New York, and all of Pennsylvania except certain portions designated. It was "further agreed that, in consideration of the aforesaid $2,500 per year, the plaintiff was to pay all his own

expenses connected with the sale of the goods of the said company in the territory mentioned." The clause of the contract which is now material is that which designates the duties of the plaintiff, and is as follows, viz: " I am to call on the jobbing or wholesale trade, and such retail trade as in my judgment will not conflict with my wholesale customers, and as often as deemed necessary to advance the interests of the West Branch Hosiery Company, and I further agree to call at any time upon any customers in my territory that said company may desire without any expense to said company." The only discretion which the plaintiff reserved to himself when he made this proposition was that he should only be required to call on such retail trade as in his judgment would not conflict with his wholesale customers. His duty to call upon the jobbers and wholesale dealers was unrestricted, and it was his duty to call upon retail dealers whose trade would not interfere with that of those to whom he sold goods at wholesale ; upon the question of this interference the plaintiff had a right to exercise his own judgment. If we eliminate from the contract all reference to the retail trade it would then read: " I am to call on the jobbing and wholesale trade as often as deemed necessary to advance the interests of the West Branch Hosiery Company, and I further agree to call at any time upon any customers in my territory that said company may desire without any expense to said company." The general undertaking was to call as often as deemed necessary to advance the interests of the defendant company. As often as deemed necessary by whom? The plaintiff was making this proposition to the defendant company ; it was its interests that were to be advanced; and when a servant undertakes to do such things as are deemed necessary to advance the interests of his master, it is for the master and not the servant to determine what is necessary. The concluding clause of the sentence, in which the plaintiff further agreed to call at any time upon any customers in the territory that the company might desire, without expense to the company, was simply intended to make clear this same idea: that the defendant company should have the right to determine when it was necessary in order to further its interests that the plaintiff should call upon dealers, and that when it did so the plaintiff should make those calls without expense to the company. The

contention of the plaintiff that the word "customers" as used in this clause of the sentence is to be construed as meaning simply those who were already dealing with the company is without force. The purpose of this agreement was to extend the sale of the goods of the defendant company into new fields, and the term "any customers," as here used, meant any customers for the goods which were the subject-matter of this contract. Under the terms of this contract the plaintiff was not required to call upon wholesale dealers in hardware or groceries, but he was required to call upon those classes of dealers in the goods which the defendant company manufactured; they were the customers whom he was required to seek out. This sentence in the contract is not to be torn into disconnected shreds and deprived of its force and efficacy; when the plaintiff tendered this proposition to the defendant company the meaning of this sentence was that he would call upon the wholesale dealers and jobbers in the class of goods which the defendant company manufactured, located within the territory of which he took charge, at any time that it required him to do so, without expense to it. If there were evidence which established that the defendant company was not acting in good faith in sending the plaintiff upon such a journey, another question might arise, but of that we have here no suggestion.

The defendant company had an unquestionable right under the contract to order the plaintiff to go to Elmira and the other cities designated in its letter of instruction, some of which cities he had never visited, although he had been drawing his salary for almost a year. The fact that it suggested that after he had finished his duties as a salesman in the cities designated he should return by way of Milton and stop off there, is not material; it may not have had the right to require him to go to Milton, but it certainly did have the right to send him to the other cities, and when he got through with his business trip, he could have gone home by any route that he chose. The factory of the defendant company was located at Milton; that it should ask a salesman to whom it was paying $2,500 a year to stop off and visit its place of business was not an unreasonable request, and it is certain that the mere making of such a suggestion would not relieve the plaintiff from performing the duties which his contract imposed upon him. The plaintiff ad-

mits that he received the written order of the defendant to go to Albany and the other cities designated, and that he did not obey that order; this was a wilful disobedience of a lawful order, and the defendant company had a right to dismiss the plaintiff and put an end to the contract of employment. The plaintiff was promptly notified of his dismissal and his salary was paid down to a date subsequent thereto. With these facts clearly presented the conclusion of the learned judge of the common pleas that the plaintiff was not entitled to recover was clearly right. The defendant was entitled to the binding instructions given by the court below and it is, therefore, unnecessary separately to consider the various assignments of error.

The judgment is affirmed.